UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN BARTH,
     Plaintiff,

     v.                                        CIVIL ACTION NO.
                                               15-13794-MBB
CITY OF PEABODY,
RK REALTY TRUST, and
RICHARD DEPIETRO,
     Defendants.

**MEMORANDUM AND ORDER RE:**
**MOTION FOR SUMMARY JUDGMENT AS TO**
**DEFENDANT CITY OF PEABODY**
**(DOCKET ENTRY # 65)**

**March 30, 2018**

**BOWLER, U.S.M.J.**

     This action concerns attempts by plaintiff John Barth
("Barth") to build a residential dwelling on property he
purchased in Peabody, Massachusetts.  Presently, he moves for
summary judgment against defendant City of Peabody ("the City")
on Count I of the complaint.  (Docket Entry # 65).  The City
opposes the motion.  (Docket Entry # 82).

     Liberally construing the pro se complaint, Count I raises
claims against the City for:  (1) a taking of Barth's property
without just compensation under sections six and ten of
Massachusetts General Laws chapter 79 ("chapter 79") and under
the Fifth and Fourteenth Amendments; (2) a denial of equal
protection under the Fourteenth Amendment and the state

constitution;[1] (3) a denial of property without due process under the Fourteenth Amendment and the state constitution; (4) a violation of the prohibition against application of an ex post facto law under article I, section nine of the Constitution; and (5) violations of 42 U.S.C. §§ 1985(3) and 1986. (Docket Entry # 1).

Count I also repeatedly cites to "the Civil Rights Act[s,] 42 USC [sic] §§ 1981-1986," including 42 U.S.C. § 1983 ("section 1983"). (Docket Entry # 1). It is not entirely clear from the pro se complaint that Barth is presenting direct claims under the federal Constitution as opposed to more appropriate section 1983 claims. Ordinarily, "'a litigant complaining of a violation of a [federal] constitutional right does not have a direct cause of action under the United States Constitution but rather must utilize 42 U.S.C. § 1983.'" Murphy v. Baker, Civil Action No. 15-30187-MGM, 2017 WL 2350246, at *2 (D. Mass. May 4, 2017), report and recommendation adopted, 2017 WL 2363114 (D. Mass. May 30, 2017); see also Wilson v. Moreau, 440 F. Supp. 2d 81, 92 (D.R.I. 2006). Accordingly, this court construes the claims under the federal Constitution as brought under section 1983.[2]

_____

[1] The complaint alleges a violation of the Massachusetts Civil Rights Act, Massachusetts General Laws chapter 12, section 11H ("MCRA").

[2] In the event Barth wishes to assert a direct claim under the federal Constitution, he is instructed to file a brief that sets out the law, distinguishes the above cases, and cites to

In any event, a section 1983 claim as well as a direct claim under the Constitution require the plaintiff to show the violation of a constitutional right.  <u>See</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 328 (1986) (section 1983 requires conduct by state actor that "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States").

### STANDARD OF REVIEW

Summary judgment is designed "'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"  <u>Tobin v. Federal Express Corp.</u>, 2014 WL 7388805, at *2 (1st Cir. Dec. 30, 2014) (quoting <u>Wynne v. Tufts University School of Medicine</u>, 976 F.2d 791, 794 (1st Cir. 1992)).  It is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  It is inappropriate "if the record is sufficiently open-ended to permit a rational factfinder to resolve a material factual dispute in favor of either side."  <u>Pierce v. Cotuit Fire District</u>, 741 F.3d 295, 301 (1st Cir. 2014).

---

cases that allow such a direct claim.  He should file the brief on or before April 12, 2018 and it shall be limited to five pages, double spaced.  If Barth does not file the brief, this court will simply treat the federal constitutional claims as seeking relief under section 1983 as well as brought under the other civil rights statutes the complaint cites, namely, "42 U.S.C. §§ 1981-1986."

"An issue is 'genuine' when a rational factfinder could resolve it [in] either direction" and a "fact is 'material' when its (non)existence could change a case's outcome." Mu v. Omni Hotels Mgt. Corp., 882 F.3d 1, 5 (1st Cir. 2018); accord Green Mountain Realty Corp. v. Leonard, 750 F.3d 30, 38 (1st Cir. 2014). The record is viewed in favor of the nonmoving party, i.e., the City, and reasonable inferences are drawn in its favor. See Garcia-Garcia v. Costco Wholesale Corp., 878 F.3d 411, 417 (1st Cir. 2017) (court examines "'record in the light most favorable to the nonmovant' and must make 'all reasonable inferences in that party's favor'"); Ahmed v. Johnson, 752 F.3d 490, 495 (1st Cir. 2014). In reviewing a summary judgment motion, a court may examine "all of the record materials on file" even if not cited by the parties. Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014); Fed. R. Civ. P. 56(c)(3). "'"[C]onclusory allegations, improbable inferences, and unsupported speculation"'" are ignored. Garcia-Garcia v. Costco Wholesale Corp., 878 F.3d at 417. Adhering to this framework, the facts are as follows.

<u>FACTUAL BACKGROUND</u>

On or about September 9, 2011, Barth purchased property located at 4 Lynn Street in Peabody for $1,000 from the Federal Home Loan Mortgage Corporation ("Freddie Mac"). (Docket Entry #

67, Ex. D, p. 35).[3]  The property consisted of only land because
the City, due to safety concerns or "the prior owner," Freddie
Mac, demolished the building on April 8, 2011.  (Docket Entry #
67, Ex. D, p. 35) (Docket Entry # 67, Ex. A, p. 10); Barth v.
City of Peabody, Docket No. 14-P-299 (Mass. App. Ct. Jan. 12,
2015.[4]  The land is zoned for residential property and the former
building consisted of a one-story, two-bedroom, 750 square foot
house built in or around 1800.  (Docket Entry # 67, Ex. D, p.
35).

     In fiscal year ("FY") 2010, the Board of Assessors of the
City of Peabody ("the board of assessors") assessed the land,
which consisted of .042 acres, as worth $116,200 and the building
as worth $22,600.  (Docket Entry # 67, Ex. D, p. 41).  The board
of assessors assessed a neighboring property at 2 Lynn Street
consisting of .102 acres of land as worth $104,100 and a two-
story, multi-bedroom, 3,370 square foot home built in 1899 on the
property as worth $220,400 in FY 2010.  Defendant RK Realty Trust
is the record owner on the property card and defendant Richard
DiPietro is a trustee.  (Docket Entry # 67, Ex. G, p. 43).  The
FY 2010 assessed value of another neighboring property consisting
of .158 acres of land and a one-story, two-bedroom, 1,382 square

---

[3]  Page numbers refer to the docketed page number in the upper,
right hand corner of the document.

[4]  The City attached a copy of the above decision to its
memorandum.  (Docket Entry # 82-1).

5

foot house built in or around 1800 at 6 Lynn Street was $118,000 and $75,200, respectively. (Docket Entry # 67, Ex. G, p. 42).

In FY 2011, the board of assessors assessed the land of Barth's property as worth $89,000 and the building as worth $5,900. Meanwhile, the assessed value of the land at 2 Lynn Street increased to $119,700 and the building decreased to $168,100 for FY 2011. (Docket Entry # 67, pp. 34, 40). The FY 2011 assessed value of the land at 6 Lynn Street similarly increased to $135,700 and the building decreased slightly to $74,200. (Docket Entry # 67, pp. 33, 39).

In FY 2012, the board of assessors assessed the value of the land as $3,200 and the building as $5,900 for Barth's property. (Docket Entry # 67, Ex. G, pp. 32, 35). Meanwhile, the assessments of the land and the building at 2 Lynn Street remained the same for FY 2012 as did the assessments of the land and the building at 6 Lynn Street. (Docket Entry # 67, Ex. G, pp. 33-34, 36-37). In FY 2013, the board of assessors afforded no value to Barth's property other than the land assessed at $3,200. (Docket Entry # 67, Ex. G, p. 32).

On October 12, 2011, Barth submitted an application for a variance to rebuild the home "demolished by the prior owner" to the City Clerk's Office of the City of Peabody. (Docket Entry # 67, Ex. A, pp. 10-11). In lieu of a variance, the application requested a finding "that no variance is required" to rebuild the

house because Massachusetts General Laws chapter 40A ("chapter 40A"), section six, exempts the reconstruction of homes built prior to the 1975 enactment of the statute from local zoning ordinances when the reconstruction "'does not increase the nonconforming nature of said structure.'"[5]  (Docket Entry # 67, Ex. A, pp. 10-11).  The application proposed a number of dimensions and setbacks for the house, including "rebuilding within the original location of the home" on piers to handle flooding with a "landscape buffer."  (Docket Entry # 67, Ex. A, p. 11).

By letter dated October 14, 2011, the Building Commissioner of the City of Peabody ("the commissioner") determined that Barth needed a variance from the Zoning Board of Appeals of the City of Peabody ("the ZBA") to build the proposed home due to its noncompliance with setbacks, lot frontage, and other dimensions in the City of Peabody Zoning Ordinance 2011, as amended ("the 2011 Peabody Zoning Ordinance"), section 7.2 ("section 7.2"). (Docket Entry # 67, Ex. B, p. 12).  Unable to obtain a building permit for the proposed home, Barth applied to the ZBA for a variance.

---

[5]  The complaint presents the same legal argument.  Enacted in 1920, the earliest predecessor statute to chapter 40A, section six, postdated the construction of the home built in or around 1800.  The above-quoted language in section six appears in the so-called second "except" clause of the first paragraph.  See generally Dial Away v. Zoning Bd. of Appeals, 669 N.E.2d 446, 448 (Mass. App. Ct. 1996).

On July 16, 2012, the ZBA held a public hearing and two days later denied the application for a variance because the proposed dwelling did not comply with left, right, and rear setbacks; lot size; lot frontage; buildable area width; and required minimum parking spaces in section 7.2.[6] (Docket Entry # 67, Ex. E, p. 26). The ZBA thereby applied the 2011 existing ordinance, section 7.2, to the proposed home which, as reflected in one of the application's options, was within the original location or footprint subject to piers and a landscape buffer. The differences between the proposed dimensions and the existing requirements in section 7.2 were substantial. For example, section 7.2 required a 15,000 square foot lot to build the home whereas the lot was 1,841 square feet. The 15-foot required, left yard setback in section 7.2 was also significantly greater than the proposed, three-foot left yard setback. The ZBA decision identifies similar, significant discrepancies between the required and the proposed right, front, and rear setbacks. (Docket Entry # 67, Ex. E, p. 26).

Dissatisfied with the ZBA's decision, Barth filed a

---

[6] Previously, in January 2012, the Department of Public Service of the City of Peabody reviewed Barth's variance plans and asked the ZBA to require that Barth provide a plot plan signed and stamped by a registered land surveyor. (Docket Entry # 67, Ex. C, p. 15). Thereafter, a registered land surveyor prepared a plan for Barth, which he submitted to the Massachusetts Department of Environmental Protection. (Docket Entry # 67, Ex. D, p. 23).

complaint in Massachusetts Superior Court (Essex County) ("the trial court") against the City on August 2, 2012. The two-count complaint alleged that the ZBA's denial of the variance effectuated a public taking of the land without compensation under sections six and ten of chapter 79, the MCRA, the Massachusetts constitution and the Declaration of Rights. (Docket Entry # 82-2, p. 3). In a comprehensive opinion, the trial court allowed the City's summary judgment motion. The court explicitly and repeatedly stated that Barth "is not appealing the decision of the ZBA under" section 17 of chapter 40A.[7] (Docket Entry # 82-2). The trial court rejected the state law eminent domain claim brought under chapter 79, sections six and ten, because there was no taking. (Docket Entry # 82-2). In January 2015, the Massachusetts Court of Appeals ("the appeals court") affirmed the judgment on the basis that Barth did not appeal the ZBA's decision under section 17 of chapter 40A and, accordingly, did not exhaust his administrative remedies. Barth v. City of Peabody, Docket No. 14-P-299 (Mass. App. Ct. Jan. 12, 2015; (Docket Entry # 82-1).

DISCUSSION

---

[7] Although the first sentence of the complaint stated, "'This is an Appeal from a decision of the Zoning Board of Appeals . . . to deny a zoning variance[,]" the complaint requested damages for an unlawful taking and did not name the ZBA as a defendant. (Docket Entry # 82-1). In proceedings before the trial court, Barth admitted a number of times in open court that he was not appealing the ZBA's decision. (Docket Entry # 82-2).

I.  <u>Constructive Taking of Barth's Property</u>

Barth initially argues that section six of chapter 40A exempts the rebuilding of preexisting, nonconforming structures from the City's zoning ordinances.  According to Barth, the City's application of the 2011 Peabody Zoning Ordinance to require a variance and the denial of that variance therefore constituted a taking without compensation under the Fifth Amendment and the Massachusetts eminent domain statutes, namely, sections six, ten, and 14 of chapter 79.  (Docket Entry # 66).[8] The City contends that:  (1) Barth did not exhaust his "administrative and prior judicial remedies" by appealing the ZBA's denial of the variance under chapter 40A, section 17; and (2) no actual or constructive taking took place.  (Docket Entry # 82).

Turning to the first argument and citing <u>Williamson County Regional Planning Commission v. Hamilton Bank</u>, 473 U.S. 172, 190-191 (1985) ("<u>Williamson</u>"), the City maintains that Barth's failure to appeal the denial of the variance under section 17 of chapter 40A in state court bars any further relief in federal court.  <u>Williamson</u> imposes a prudential, "binary test" to bring a Fifth Amendment takings claim in federal court.  <u>Marek v. Rhode</u>

---

[8]    In addition to the above supporting memorandum, Barth filed a response to the City's opposition (Docket Entry # 82) which this court has considered.  (Docket Entry # 86); <u>see</u> LR. 56.1 (allowing reply briefs).

Island, 702 F.3d 650, 653 (1st Cir. 2012); see also Horne v.
Department of Agriculture, 569 U.S. 513, 526 (2013) ("prudential
ripeness . . . is not, strictly speaking, jurisdictional")
(internal quotation marks and citation omitted); Perfect Puppy,
Inc. v. City of E. Providence, R.I., 807 F.3d 415, 421 (1st Cir.
2015) ("we confess that we are not 100% sure that the
state-exhaustion requirement actually is jurisdictional") (citing
Williamson, 473 U.S. at 194, and Horne, 569 U.S. at 526);
Athanasiou v. Town of Westhampton, 30 F. Supp. 3d 84, 87–88 (D.
Mass. 2014) ("in recent years, however, the Supreme Court has
clarified that this ripeness requirement is a prudential
limitation, rather than an Article III jurisdictional
limitation").  "For a takings claim to be ripe, prior state
administrative and/or judicial processes not only must have
wrought a taking of particular property but also must have
established the sovereign's refusal to provide just compensation
for the property taken."  Marek v. Rhode Island, 702 F.3d at 653
(citing Williamson, 473 U.S. at 186); accord Horne v. Department
of Agriculture, 569 U.S. at 526 (Fifth Amendment claim is
premature until "the Government has both taken property and
denied just compensation").

In a regulatory takings claim such as Barth's claim, the
first requirement thus "entails the existence of a *final* decision
as to 'the application of the regulations to the property.'"

11

Marek v. Rhode Island, 702 F.3d at 653 (emphasis added).  The

reasoning for this requirement is that a "taking involves a

complex inquiry into facts that 'simply cannot be evaluated until

the administrative agency has arrived at a final, definitive

position regarding' its application of the law to the land in

question."  Downing/Salt Pond Partners, L.P. v. Rhode Island and

Providence Plantations, 643 F.3d 16, 20 (1st Cir. 2011) (quoting

Williamson, 473 U.S. at 191); see Palazzolo v. Rhode Island, 533

U.S. 606, 618 (2001).  Further elucidating this reasoning, the

Supreme Court in Palazzolo explains that:

> [A] takings claim based on a law or regulation which is
> alleged to go too far in burdening property depends upon the
> landowner's first having followed reasonable and necessary
> steps to allow regulatory agencies to exercise their full
> discretion in considering development plans for the
> property, including the opportunity to grant any variances
> or waivers allowed by law.  As a general rule, until these
> ordinary processes have been followed the extent of the
> restriction on property is not known and a regulatory taking
> has not yet been established.

Palazzolo v. Rhode Island, 533 U.S. at 620-21.

By rejecting all of the building options Barth presented,

the ZBA reached a final decision.  Similarly, the Court in

Palazzolo rejected a ripeness argument because the case was

"unlike those . . . which arose when an owner challenged a

land-use authority's denial of a substantial project, leaving

doubt whether a more modest submission or an application for a

variance would be accepted."  Palazzolo v. Rhode Island, 533 U.S.

at 620 (emphasis added).  Here, there is little doubt that the

12

regulatory agency, the ZBA, will revisit and allow even a limited, smaller structure because Barth proposed and the ZBA rejected this solution as one of the five options he presented in the application.[9] The extent of the restriction on the property is known, namely, it remains an unbuildable lot that is not subject to a variance from the dimension schedule in section 7.2.

The City's argument that Barth did not exhaust his state judicial remedies by appealing the ZBA's denial of the variance to state court under chapter 40A more readily invokes the second Williamson requirement. This requirement "entails a showing that the plaintiff has run the gamut of state-court litigation in search of just compensation (provided, however, that the state makes available adequate procedures for this purpose)." Marek v. Rhode Island, 702 F.3d at 653. The consequences of a failure to pursue the adequate state court remedy in a timely manner forfeits the federal takings claim. See Pascoag Reservoir & Dam, LLC v. Rhode Island, 337 F.3d 87, 94 (1st Cir. 2003).

In Marek, the plaintiff's failure to avail himself of the "adequate procedural pathway" of inverse condemnation relief in Rhode Island state court proved fatal to his ability to seek relief in federal court. See id. at 653-64. Massachusetts

---

[9] In lieu of building within the same footprint, Barth proposed rebuilding a smaller structure, albeit "with compensation for the reduced land value." (Docket Entry # 67, p. 11).

courts likewise recognize a cause of action for inverse
condemnation under section ten of chapter 79. See Gilbert v.
City of Cambridge, 932 F.2d 51, 64 (1st Cir. 1991). Moreover,
this eminent domain statute provides "'an adequate means of
obtaining just compensation for any alleged taking.'" Id. at 64-
65 (agreeing with and quoting the lower court's decision). In
the case at bar, Barth brought an inverse condemnation action in
state court and the trial court rejected the chapter 79 claim.
In particular, the trial court determined there was no taking
and, specifically, no compensable taking of Barth's property
under sections six and ten of chapter 79. (Docket Entry # 82-2,
pp. 3, 11). Thus, Barth sought just compensation under the state
statute and the trial court denied the chapter 79 claim. The
City's argument therefore does not preclude this court from
adjudicating the Fifth Amendment takings claim. See Perfect
Puppy, Inc. v. City of E. Providence, R.I., 807 F.3d 415, 420
(1st Cir. 2015) (if "state offers adequate procedures for seeking
just compensation (and Rhode Island does), then there is no
constitutional infraction—and no takings claim is ripe—until the
litigant asks the government for fair payment and is denied");
Adams v. Town of Montague, Civil Action No. 14-30178-MGM, 2015 WL
1292402, at *2 (D. Mass. Mar. 23, 2015) ("Plaintiffs must first
exhaust their remedies in state court under M.G.L. c. 79 before
bringing a Fifth Amendment takings claim, as well as a procedural

due process claim based on the same alleged taking").

The City seeks to extend the state litigation requirement to Barth's failure to file an appeal of the ZBA's denial under chapter 40A, section 17. Section 17 does not address a taking without just compensation as do the foregoing eminent domain statutes in chapter 79. Rather, section 17 allows an aggrieved person such as Barth to bring an action to annul a decision by "the [zoning] board of appeals" on the basis that the board's decision exceeded its authority. Mass. Gen. Laws ch. 40A, § 17, ¶ 1.[10] Accordingly, solely for purposes of resolving Barth's summary judgment motion, Barth adequately complied with the second <u>Williamson</u> requirement by challenging the taking without compensation under the adequate procedure available in sections

---

[10]   In pertinent part, the statute reads as follows:

Any person aggrieved by a decision of the board of appeals . . . may appeal to the land court department or the superior court department in which the land concerned is situated . . . by bringing an action within twenty days after the decision has been filed in the office of the city or town clerk . . . . The complaint shall allege that the decision exceeds the authority of the board or authority, and any facts pertinent to the issue, and shall contain a prayer that the decision be annulled.

. . . . The court shall hear all evidence pertinent to the authority of the board . . . and determine the facts, and, upon the facts as so determined, annul such decision if found to exceed the authority of such board . . . . The foregoing remedy shall be exclusive . . . ..

Mass. Gen. Laws ch. 40A, § 17.

six and ten of chapter 79, which the trial court denied.

Accordingly, this court turns to the City's second argument that no taking occurred and Barth's argument to the contrary. The Takings Clause of the Fifth Amendment, which applies to the states through the Fourteenth Amendment, declares that "private property shall not 'be taken for public use, without just compensation.'" Murr v. Wisconsin, 137 S. Ct. 1933, 1942 (2017). Once Barth became the owner of the property, the City did not engage in a physical taking of the property. It neither condemned the property nor physically appropriated it. See Philip Morris, Inc. v. Reilly, 312 F.3d 24, 33 (1st Cir. 2002) ("physical taking occurs either when there is a condemnation or a physical appropriation of property").

Another manner in which a state actor engages in a categorical taking is by a regulation that "denies all economically beneficial or productive uses of land." Murr v. Wisconsin, 137 S. Ct. at 1942 (citing, inter alia, Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1015 (1992)); Lucas v. S.C. Coastal Council, 505 U.S. at 1029 ("regulations that prohibit all economically beneficial use of land . . . cannot be newly legislated or decreed (without compensation)"); accord Palazzolo v. Rhode Island, 533 U.S. at 617 ("Palazzolo") (quoting Lucas, 505 U.S. at 1015); Maine Education Association Benefits Trust v. Cioppa, 695 F.3d 145, 153 (1st Cir. 2012) (quoting Lingle v.

16

Chevron U.S.A. Inc., 544 U.S. 528, 538 (2005)); see also Stop the
Beach Renourishment, Inc. v. Fla. Dept. of Environmental
Protection, 560 U.S. 702, 713 (2010) ("our doctrine of regulatory
takings 'aims to identify regulatory actions that are
functionally equivalent to the classic taking'" such as when a
regulation deprives the owner "of all economically beneficial use
of his property").  The standard to satisfy this form of
categorical taking is high.  See Lucas v. S.C. Coastal Council,
505 U.S. at 1019, n.8.  Subsequent to Lucas, the Supreme Court
reiterated that Lucas is "'limited to the extraordinary
circumstance when _no_ productive or economically beneficial use of
land is permitted.'"  Tahoe-Sierra Preservation Council, Inc. v.
Tahoe Regional Planning Agency, 535 U.S. 302, 330 (2002) (quoting
Lucas, 505 U.S. at 1017) (emphasis in original).  Indeed, a
footnote in the Lucas opinion "explain[ed] that the categorical
rule would not apply if the diminution in value were 95% instead
of 100%."  Id. (citing Lucas, 505 U.S. at 1019, n.8).

Although Barth maintains that the City deprived him of all
economically beneficial use of the property by denying him the
ability to rebuild the nonconforming, preexisting dwelling, the
fact remains that Barth purchased the property for $1,000
(Docket Entry # 67, Ex. D, p. 35) and admits that a neighbor

offered him $1,000 for the property (Docket Entry # 1, ¶ 56).[11]
The assessed value of the property after the purchase ($3,200) is
more than Barth paid for the property albeit less than the
assessed value prior to the purchase.  See Murr v. Wisconsin, 137
S. Ct. at 1949 ("[t]he property has not lost all economic value,
as its value has decreased by less than 10 percent").  In sum,
Barth therefore fails to establish that the City engaged in a
categorical taking by a physical invasion or a regulation that
completely deprived Barth of all economically beneficial use of
the property.  Accordingly, the existence of a taking under the
Fifth Amendment entails examining "the Penn Central factors."
Maine Education Association Benefits Trust v. Cioppa, 695 F.3d at
153.

        Turning to the task, a taking may occur "when a regulation
impedes the use of property without depriving the owner of all
economically beneficial use."  Murr v. Wisconsin, 137 S. Ct. at
1942.  The assessment considers "'a complex of factors,'
including (1) the economic impact of the regulation on the
claimant; (2) the extent to which the regulation has interfered
with distinct investment-backed expectations; and (3) the

_____

    [11]   The City seeks to use the latter statement as an admission
(Docket Entry # 82, pp. 10-11), which is permissible.  See Schott
Motorcycle Supply, Inc. v. American Honda Motor Co., 976 F.2d 58,
61 (1st Cir. 1992) ("party's assertion of fact in a pleading is a
judicial admission by which it normally is bound throughout the
course of the proceeding"); see also Pruco Life Ins. Co. v.
Wilmington Trust Co., 721 F.3d 1, 11 (1st Cir. 2013).

18

character of the governmental action." <u>Id.</u> at 1942-43 (quoting

<u>Palazzolo v. Rhode Island</u>, 533 U.S. at 617); <u>see</u> <u>Penn Central</u>

<u>Transportation Co. v. New York City</u>, 438 U.S. 104, 129-31 (1978).

Initially examining the second factor, it protects a

landowner's "'*reasonable* expectations.'" <u>Maine Education</u>

<u>Association Benefits Trust v. Cioppa</u>, 695 F.3d at 154 (quoting

<u>Philip Morris, Inc. v. Reilly</u>, 312 F.3d at 36) (emphasis in

original). For example, when a claimant purchases a property

already included in a designated port area, he has no reasonable

expectation that the "property would be free of DPA

restrictions." <u>U.S. Gypsum Co. v. Office of Environmental</u>

<u>Affairs</u>, 867 N.E.2d 764, 778 (Mass. App. Ct. 2007) (citing <u>Lucas</u>,

505 U.S. at 1030); <u>see</u> <u>Lucas v. S.C. Coastal Council</u>, 505 U.S. at

1030 (noting that, "Takings Clause does not require compensation

when an owner is barred from putting land to a use that is

proscribed by those 'existing rules or understandings' is surely

unexceptional"). Likewise, the petitioners in <u>Murr</u> could not

"claim that they reasonably expected to sell or develop their

lots separately given the regulations which predated their

acquisition of both lots." <u>Murr v. Wisconsin</u>, 137 S. Ct. at

1949. Similarly, as explained in <u>Lucas</u>, the Court "assuredly

*would* permit the government to assert a permanent easement that

was a pre-existing limitation upon the land owner's title."

<u>Lucas v. S.C. Coastal Council</u>, 505 U.S. at 1028-29 (emphasis in

original).

At first glance, therefore, the ZBA's enforcement of the dimensional controls in section 7.2, in existence at the time Barth purchased the property, appears unexceptional. Section 7.2, however, is subject to chapter 40A, section six, see Chilson v. Zoning Bd. of Appeal of Attleboro, 182 N.E.2d 535, 539 (Mass. 1962); McLaughlin v. City of Brockton, 587 N.E.2d 251, 252 (Mass. App. Ct. 1992) (lower court's interpretation "would place that ordinance in conflict with the enabling Zoning Act, . . . in G.L. c. 40A, § 6"), which also existed at the time Barth purchased the property and, consequently, forms the statutory and regulatory background or expectations in which Barth made his investment in purchasing the property. See Lucas v. S.C. Coastal Council, 505 U.S. at 1030.

Barth maintains "that the right of the prior use runs with the land" because section six of chapter 40A exempts preexisting, nonconforming structures, such as the house built on the property in 1800 prior to the enactment of the 2011 Peabody Zoning Ordinance. (Docket Entry # 66). As long as the rebuilt home "'does not increase the nonconforming nature'" of the prior structure, section six of chapter 40A recognizes that the right to rebuild the nonconforming structure runs with the land and exempts such preexisting structures from local zoning ordinances, according to Barth.

Notably, this court is not addressing the annulment of the ZBA's decision as exceeding the board's authority under chapter 40A, section 17.  As determined by the trial court and the appeals court, Barth did not appeal the ZBA's decision under section 17.  Rather, the analysis of the relationship between section six of chapter 40A and the 2011 Peabody Zoning Ordinance, section 7.2, pertains to the reasonable, investment-backed expectations of Barth at the time he purchased the property.

Section six of chapter 40A "gives special status to nonconforming single and two-family residences and allows them to be rebuilt despite changes in the zoning by-laws," provided they existed before the effective date of the ordinances or bylaws that render them nonconforming.  Dial Away Co., Inc. v. Zoning Bd. of Appeals of Auburn, 669 N.E.2d 446, 449 (Mass. App. Ct. 1996); see Palitz v. Zoning Bd. of Appeals of Tisbury, 26 N.E.3d 175, 179 (Mass. 2015) (because "structure predated the effective date of the bylaw, it appears to have constituted a preexisting nonconforming structure entitled to grandfather status under" chapter 40A, section six).  For such preexisting, nonconforming structures, "'reconstruction' . . . is permitted despite a change in the zoning by-law if such activity 'does not increase the nonconforming nature of said structure.'"  Dial Away Co., Inc. v. Zoning Bd. of Appeals of Auburn, 669 N.E.2d at 449 (quoting second except clause in chapter 40A, section six); see also

<u>Chiaraluce v. Ferreira</u>, 11 Misc 451014 GHP, 2012 WL 2878155, at *2-3, 9 (Mass. Land Ct. July 16, 2012) (noting that section six "permits some interval between the demolition and reconstruction of a structure on a nonconforming lot"), <u>aff'd</u>, 48 N.E.3d 475 (Mass. App. Ct. 2016). Massachusetts law at the time of Barth's purchase also provided an expectation that "the right to continue a nonconforming use is not confined to the existing user, but runs with the land" although "that right can be lost if a predecessor in title has *abandoned* the use." <u>Derby Refining Co. v. City of Chelsea</u>, 555 N.E.2d 534, 538 (Mass. 1990) (citing <u>City of Revere v. Rowe Contracting Co.</u>, 289 N.E.2d 830, 831 (Mass. 1972)) (emphasis added); <u>Almeida v. Arruda</u>, 46 N.E.3d 1036, 1042 (Mass. App. Ct. 2016) ("proper focus is on the particular use, not the particular owner or operator, which may change over time").

It is debatable whether a demolition of a structure followed by a transfer of ownership allows a new owner such as Barth to assert the protection afforded under chapter 40A, section six. In lieu of deciphering whether the language of the first two sentences of section six, which is often described as "difficult and infelicitous" to apply, <u>Fitzsimonds v. Bd. of Appeals of Chatham</u>, 484 N.E.2d 113, 115 (Mass. App. Ct. 1985), allows such a construction, this court will assume in Barth's favor that it does solely for purposes of resolving Barth's summary judgment

motion.[12]

---

[12] The three cases relied upon by the City to refute Barth's argument that transfers of title do not affect the right to rebuild are distinguishable.  In Martin, the court denied a zoning applicant, who owned the property, the ability to tear down and replace a garage because it did not conform to the subdivision plan created and approved in 1965.  Martin v. Bd. of Appeals of Yarmouth, 482 N.E.2d 336, 337 (Mass. App. Ct. 1985) ("Martin").  The encroaching garage was therefore a "self-created nonconformity" as opposed to a lawful, preexisting structure entitled to grandfather protection under section six of chapter 40A.  Id.
      The Angus case forecloses a construction of section 1.5.4 of the 2011 Peabody Zoning Ordinance, which contains language similar to the bylaw construed in Angus, that extends the protection of the section to all "damaged or destroyed" structures.  See Angus v. Miller, 363 N.E.2d 1349, 1351-52 (Mass. App. 1977) (limiting "damaged or destroyed" to damaged or destroyed by catastrophe) ("Angus"); Shuffain v. Mulvehill, No. 308061, 2006 WL 1495106, at *12 (Mass. Land Ct. June 1, 2006) (consistent with "bylaw at issue in Angus-complete rebuilding or restoration is limited to instances of a casualty loss" and "[v]oluntary razing . . . is excluded from both bylaws as they address reconstruction" in "context of a casualty loss") ("Shuffain").  Angus did not address and, accordingly, does not necessarily foreclose reliance on the second except clause in the first paragraph of section six in chapter 40A as a means to obtain a permit to reconstruct the preexisting, nonconforming structure.  Furthermore, the language of the second except clause closely tracks the fourth paragraph in section 1.5.1 of the 2011 Peabody Zoning Ordinance rather than section 1.5.4.  Analogous to the second except clause, section 1.5.1 allows reconstruction of a "legally existing nonconforming" residential dwelling when the reconstruction "does not increase the nonconforming nature of the dwelling." (Docket Entry # 82-3).  Finally, the Shuffain case cited by the City involved a commercial structure as opposed to a residential structure, which receives more generous treatment under the second except clause in section six of chapter 40A.  See Shuffain v. Mulvehill, 2006 WL 1495106, at *11 ("reconstruction within an existing footprint after voluntary demolition" for residential structure "will be permissible pursuant to" second except clause).  In sum, these cases do not necessarily preclude an expectation on the part of Barth of a right to reconstruct the preexisting residential structure under the second except clause after a change in ownership.  See also fn. 12 infra.

Abandonment, which may apply to uses and to structures, "'requires "the concurrence of two factors, (1) the intent to abandon and (2) voluntary conduct, whether affirmative or negative, which carries the implication of abandonment."'"[13] Chiaraluce v. Zoning Bd. of Appeals of Wareham, 48 N.E.3d 475, 479 (Mass. App. Ct. 2016) (also noting that person seeking permit has burden to show intent and inability regarding abandonment).[14] A "voluntary demolition of a building constitutes abandonment," whereas "'mere nonuse or sale of property does not, by itself, constitute an abandonment.'" Dial Away Co., Inc. v. Zoning Bd. of Appeals of Auburn, 669 N.E.2d at 450. "'Abandonment is primarily a question of fact,'" Derby Refining Co. v. City of Chelsea, 555 N.E.2d 534, 539 (Mass. 1990), and may include factual issues regarding the intent of prior owners. See

---

[13] Abandonment is distinct from a requirement in a bylaw that non-use for two years may extinguish a prior, nonconforming use or structure. See Kanj v. D'Agostino, 15 Misc. 000446 (AHS), 2017 WL 2406190, at *7 (Mass. Land Ct. May 31, 2017).

[14] The appeals court in Chiaraluce v. Zoning Bd. of Appeals of Wareham, 48 N.E.3d 475, 479 (Mass. App. Ct. 2016), and the trial court in a bench trial and previously in a summary judgment ruling did not deny the current owner the ability to reconstruct a hurricane-demolished cottage on the basis that it did not own the cottage at the time of the destruction. See Chiaraluce v. Ferreira, 11 MISC 451014 GHP, 2014 WL 7466508 (Mass. Land Ct. Dec. 31, 2014) (bench trial opinion); Chiaraluce v. Ferreira, 11 MISC 451014 GHP, 2012 WL 2878155 (Mass. Land Ct. July 16, 2012) (partially allowing summary judgment). The parties, however, did not make an argument regarding the lack of ownership at the time of the destruction and a resulting inability to rely on the second except clause.

<u>Chiaraluce v. Zoning Bd. of Appeals of Wareham</u>, 2014 WL 7466508,

at *9 (missed opportunities to reconstruct residence started with

prior owner), <u>aff'd</u>, 48 N.E.3d 475 (Mass. App. Ct. 2016).

Although the time period is short, there is no indication that

Freddie Mac attempted to obtain approval to reconstruct the

demolished structure.  These and other factual issues surround

the abandonment issue in the case at bar.  Thus, although Barth

had some expectation to continue the nonconforming, preexisting

residential use and to reconstruct the demolished structure, the

factual issues regarding abandonment detract from the

reasonableness of that expectation.

    Turning to the first <u>Penn Central</u> factor, the economic

impact of enforcing section 7.2 of the 2011 Peabody Zoning

Ordinance and thereby denying the residential use and the

reconstruction of the structure does not inevitably favor Barth.

Viewing the record in the City's favor, as required, a neighbor

expressed a willingness to purchase the property for $1,000

evidencing the impact after the regulation's enforcement as less

severe than Barth alleges.

    Addressing the third <u>Penn Central</u> factor, "'A "taking" may

more readily be found when the interference with property can be

characterized as a physical invasion by government than when the

interference arises from some public program adjusting the

benefits and burdens of economic life to promote the common

good.'" <u>Maine Education Association Benefits Trust v. Cioppa</u>,
695 F.3d at 157 (quoting <u>Penn Central</u>, 438 U.S. at 124) (citation
and internal brackets omitted). Minimum lot sizes and set back
requirements, such as those in section 7.2, are "standard zoning
tools" used by local governments to temper density of residential
areas, road congestion, overcrowding in schools, overuse of sewer
systems, and other public services. <u>Quinn v. Bd. of County
Commissioners for Queen Anne's County, Maryland</u>, 862 F.3d 433,
441 (4th Cir. 2017). As such, the third <u>Penn Central</u> factor does
not invariably favor Barth.

On balance, the <u>Penn Central</u> factors do not warrant summary
judgment in Barth's favor on the Fifth Amendment takings claim.
Whether a finder of fact will consider the 2011 Peabody Zoning
Ordinance a regulatory taking will entail factual inquiries in
the course of weighing "'all the relevant circumstances.'"[15]
<u>Murr v. Wisconsin</u>, 137 S. Ct. at 1942 (quoting <u>Tahoe-Sierra</u>, 535
U.S. at 322).

Barth also seeks summary judgment on the state
constitutional takings claim under chapter 79, sections six, ten,
and 14. Such a claim entails examining whether the Massachusetts
Declaration of Rights provides for reasonable compensation. <u>See
Davidson v. Commonwealth</u>, 395 N.E.2d 1314, 1316-17 (Mass. App.

---

[15] It is therefore not necessary to address Barth's arguments
regarding the value and the appropriate amount of just
compensation for any taking.

Ct. 1979) (in determining claim for damages under chapter 79, sections ten and 14, court ascertains "whether the plaintiff's property has been 'appropriated to public uses' so that 'reasonable compensation therefor' must be provided under art. 10 of the Massachusetts Declaration of Rights") (citing Sullivan v. Commonwealth, 142 N.E.2d 347, 348-49 (Mass. 1957)); see Martini v. City of Pittsfield, Civil Action No. 14-30152-MGM, 2015 WL 1476768, at *8 (D. Mass. Mar. 31, 2015). The Massachusetts Supreme Judicial Court ("SJC") evaluates state constitutional "takings claims under the Federal analysis." Commonwealth v. Blair, 805 N.E.2d 1011, 1016 (Mass. App. Ct. 2004); see Blair v. Dep't of Conservation and Recreation, 932 N.E.2d 267, 270-271 (Mass. 2010) (SJC interprets Massachusetts Declaration of Rights as affording "same protection" as "the just compensation clause of the Fifth Amendment"). Consequently, Barth's state law takings claim under chapter 79, like the federal, Fifth Amendment claim, does not warrant summary judgment in his favor.

II. Denial of Equal Protection

In moving for summary judgment on the equal protection claim, Barth maintains that the City did not deny the continued residential use to owners of other similarly situated properties, namely, the neighboring properties with preexisting, nonconforming homes at 2 and 6 Lynn Street. (Docket Entry # 66, p. 17) (Docket Entry # 1, ¶¶ 1, 9, 42). He reasons that, because

section six of chapter 40A allowed him the ability to reconstruct the preexisting, nonconforming structure, the City had no rational basis to deny him the same residential use of his property as his similarly situated neighbors.  (Docket Entry # 66, pp. 16-17).  Furthermore, by refusing to enforce section six in favor of Barth, the City selectively denied him the residential use of his property in violation of the Equal Protection Clause.  (Docket Entry # 66, pp. 16-17).  In seeking summary judgment, he also quotes the Supreme Court decision of <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (allowing class of one, equal protection claim to proceed because village intentionally demanded larger-width easement on the plaintiff's property than smaller-width easements on similarly situated properties).  Citing <u>Martin</u>, <u>Angus</u>, and <u>Shuffain</u>, the City argues that there is no right to rebuild a voluntarily-destroyed, nonconforming structure.[16]

In essence, Barth asserts that the City wrongfully denied him a building permit allowed under section six of chapter 40A and a variance from the enforcement of the dimension requirements of section 7.2 to reconstruct the residential structure on his property even though the City allowed other, similarly situated owners of adjacent properties to continue their residential use of their nonconforming structures.  To succeed on such an "equal

---

[16]    See footnote 12.

protection claim requires 'proof that (1) the person, compared
with others similarly situated, was selectively treated; and (2)
that such selective treatment was based on impermissible
considerations such as race, religion, intent to inhibit or
punish the exercise of constitutional rights, or malicious or bad
faith intent to injure a person.'"[17]  Freeman v. Town of Hudson,
714 F.3d 29, 38 (1st Cir. 2013) (quoting Rubinovitz v. Rogato, 60
F.3d 906, 909-10 (1st Cir. 1995)); see Yerardi's Moody St. Rest.
& Lounge, Inc. v. Bd. of Selectmen of the Town of Randolph, 878
F.2d 16, 21 (1st Cir. 1989) (challenge by restaurant to "closing
time" requirement imposed by local licensing authority as
condition to obtain liquor license); Walsh v. Town of Lakeville,
431 F. Supp. 2d 134, 143 (D. Mass. 2006) (considering and
examining allegations of adverse treatment based, inter alia, on
wrongfully denying permits as a class of one equal protection
claim).  Class of one equal protection claims necessitate "an
extremely high degree of similarity" between Barth and the
neighboring comparators.  Freeman v. Town of Hudson, 714 F.3d at
38.  Although there is no "precise demarcation" between similarly
situated versus not similarly situated, "'[t]he test is whether a
prudent person, looking objectively at the incidents, would think
them roughly equivalent and the protagonists similarly situated.

---

[17]  The complaint alleges that the City acted with "knowledge
and intent to deny" Barth "equal protection of the law." (Docket
Entry # 1, ¶ 42) (emphasis in original).

Much as in the lawyer's art of distinguishing cases, the "relevant aspects" are those factual elements which determine whether reasoned analogy supports, or demands, a like result.'" <u>Barrington Cove Ltd. Partnership v. Rhode Island Housing and Mortgage Finance Corp.</u>, 246 F.3d 1, 8 (1st Cir. 2001) (quoting <u>Dartmouth Review v. Dartmouth College</u>, 889 F.2d 13, 19 (1st Cir. 1989)). "'In other words, apples should be compared to apples.'" <u>Id.</u> (citation omitted).

Here, Barth presents evidence that similar residential structures on the two neighboring properties were preexisting, nonconforming structures. He also provides evidence that the owners of the two, neighboring properties continued the residential use of their preexisting, nonconforming structures built in the 1800s whereas the City denied Barth the ability to reconstruct the former, preexisting, nonconforming structure and the residential use as of right under section six of chapter 40A.

The properties, however, are not similarly situated insofar as there is no evidence of a destruction or total demolition of the structures on the other two properties and the City thereafter allowing the other owner(s) to rebuild the structure(s). There is also no evidence of attempts by the other owners to obtain building permits or variances to entirely rebuild their dwellings. <u>See</u> <u>Rubinovitz v. Rogato</u>, 60 F.3d at 910 ("the Rubinovitzes fail to present any evidence that any of

their neighbors were either required to seek a variance or actually made such a request of the Board"). Barth therefore fails to establish as a matter of law the necessary degree of similarity to entitle him to summary judgment on the equal protection claim.

## III.  Denial of Due Process

Barth also moves for summary judgment on the federal due process claim.[18]  The complaint raises a violation of procedural due process by denying him his "property without due process" by taking it without compensation.  (Docket Entry # 1, pp. 4, 8, 23) (citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972); Hudson v. Palmer, 468 U.S. 517 (1984);[19] Cleveland

---

[18]  To the extent Barth attempts to present a violation of due process under the state constitution, he does not adequately develop the argument.  See Coons v. Industrial Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010) ("district court was 'free to disregard' the state law argument that was not developed in Coons's brief").

[19]  "The Parratt–Hudson doctrine establishes that 'a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate postdeprivation remedy.'"  Garcia-Gonzalez v. Puig-Morales, 761 F.3d 81, 86 n.1 (1st Cir. 2014) (quoting Zinermon v. Burch, 494 U.S. 113, 115 (1990), citing Hudson v. Palmer, 468 U.S. 517 (1984)).  The "doctrine exists to protect states from needlessly defending the adequacy of state law process when the alleged due process violation results from a deviation from that process." Chmielinski v. Massachusetts, 513 F.3d 309, 315 (1st Cir. 2008) (paraphrasing Hudson v. Palmer, 468 U.S. at 533, as "holding that when alleged due process violations stem from 'random and unauthorized conduct,' review is limited solely to the adequacy of the post-deprivation remedies").

Bd. of Education v. Loudermill, 470 U.S. 532 (1985); and Baker v.
McCollan, 443 U.S. 193, 227 (1979)). Barth submits the City did
not take his property under the procedures afforded by the
eminent domain statute in chapter 79 and therefore took his
property without affording him due process. (Docket Entry # 66,
p. 18). He also complains that the trial court incorrectly
stated that Barth had not opposed the City's motion to dismiss
and excluded the documents Barth filed in opposition to the
motion. (Docket Entry # 66, p. 18).

    "To establish a procedural due process violation, a
plaintiff must show that (1) [he] was deprived of a protected
property interest, and (2) the procedures attendant to that
deprivation were constitutionally inadequate." Rocket Learning,
Inc. v. Rivera-Sánchez, 715 F.3d 1, 11 (1st Cir. 2013). Barth,
however, received notice and a hearing before the ZBA to
challenge the purported, constructive taking of his property
accomplished by denying him the ability to reconstruct the
demolished, preexisting, nonconforming structure. Viewing the
property interest as the right to rebuild the demolished
preexisting, nonconforming structure under section six of chapter
40A, cf. Miller v. Town of Wenham, Mass., 833 F.3d 46, 51 (1st
Cir. 2016) (assuming arguendo that Massachusetts creates property
interest in enforcement of zoning laws against unlawful uses),
the City therefore afforded Barth the opportunity to be heard

before the ZBA and he availed himself of that opportunity.  In
state court, he presented a state law eminent domain claim, which
the trial court rejected.  See id. at 54 (noting that Miller had
ability to request enforcement by Building Inspector, obtain
review by ZBA, and proceed in state court under chapter 40A,
section 17); see generally Carey v. Piphus, 435 U.S. 247, 259
(1978) (procedural due process protects "persons not from the
deprivation, but from the mistaken or unjustified deprivation of
life, liberty, or property").  The City also correctly points out
(Docket Entry # 82, p. 13) that Barth does not provide the
documents the trial court refused to consider or other
evidentiary material to support the purported denial of due
process when the trial court refused to accept the documents.
Accordingly, inasmuch as a reasonable jury could find in the
City's favor on the due process claim, Barth fails in his burden
to show that the process afforded was constitutionally
inadequate.

As a final matter, Barth's inability to obtain summary
judgment on the due process, equal protection, and takings claims
due to material issues of fact pertaining to the existence of a
constitutional violation obviates the need to address his Monell
arguments regarding the City's policies or customs.  (Docket
Entry # 66, p. 16).  Citing Monroe v. Pape, 365 U.S. 167 (1961),
Barth presents a separate, two-sentence argument that section

1983 "liability attaches when a government official act[s] beyond
[his] authority or in violation of [a] duty under state law."
(Docket Entry # 66, p. 21).  <u>Monroe</u> addresses the "acting under
color of state law" element of section 1983 liability and, in
pertinent part relative to Barth's argument, states that,
"'Misuse of power, possessed by virtue of state law and made
possible only because the wrongdoer is clothed with the authority
of state law, is action taken "under color of" state law.'"
<u>Monroe v. Pape</u>, 365 U.S. at 184, <u>overruled in part on other
grounds by Monell v. Dept. of Social Services of City of New
York</u>, 436 U.S. 658, 663 (1978) ("overrul[ing] <u>Monroe v. Pape</u>,
insofar as it holds that local governments are wholly immune from
suit under § 1983").  Here again, by virtue of recommending the
denial of summary judgment on the section 1983 claims based on
material facts regarding the violation of a constitutional right,
it is not necessary to address the color of state law element of
section 1983.  <u>See generally Wilber v. Curtis</u>, 872 F.3d 15, 19
(1st Cir. 2017) (section 1983 has "'two essential elements[,]'"
namely, "'challenged conduct must be attributable to a person
acting under color of state law'" and "'conduct must have worked
a denial of rights secured by the Constitution or by federal
law'").

IV.  <u>Section 1985 and Section 1986 Claims</u>

Barth next seeks summary judgment on the section 1985 and

34

section 1986 claims.  The City submits that, because the

underlying claims are deficient, the sections 1985 and 1986

claims fail.

Section 1985(3) creates a private right of action for

"'injuries occasioned when "two or more persons . . . conspire .

. . for the purposes of depriving, either directly or indirectly,

any person or class of persons of the equal protection of the

laws, or of equal privileges and immunities under the laws."'"

Diva's Inc. v. City of Bangor, 411 F.3d 30, 38 (1st Cir. 2005)

(quoting Burns v. State Police Association of Massachusetts, 230

F.3d 8, 12 n.3 (1st Cir. 2000)).  In order to obtain summary

judgment, Barth bears the burden to establish:  "(1) 'a

conspiracy,' (2) 'a conspiratorial purpose to deprive the

plaintiff of the equal protection of the laws,' (3) 'an overt act

in furtherance of the conspiracy,' and, lastly, (4) either (a) an

'injury to person or property' or (b) 'a deprivation of a

constitutionally protected right.'"  Soto-Padró v. Public

Buildings Authority, 675 F.3d 1, 4 (1st Cir. 2012) (quoting

Pérez-Sánchez v. Public Buildings Authority, 531 F.3d 104, 107

(1st Cir. 2008)); see also D.B. ex rel. Elizabeth B. v. Esposito,

675 F.3d 26, 44 (1st Cir. 2012) (section 1985 does not create

substantive rights).  "A section 1985 claim 'requires "some

racial, or perhaps otherwise class-based, invidiously

discriminatory animus behind the conspirators' action,"'"  Id.

(quoting <u>Pérez-Sánchez</u>, 531 F.3d at 107); <u>see</u> <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971). In presenting the section 1985(3) claim, however, Barth fails to mention or identify any racial or class-based discriminatory animus. Because he bears the underlying burden of proof on this issue, summary judgment on the section 1985(3) claim is not appropriate.

Section 1986 provides liability against "[e]very person who, having knowledge" of "wrongs conspired to be done . . . in section 1985," fails to prevent such wrongful action. 42 U.S.C. § 1986; <u>see</u> <u>Maymí v. Puerto Rico Ports Authority</u>, 515 F.3d 20, 30 (1st Cir. 2008) (section 1986 "extends liability to those who knowingly failed to prevent conspiracies under § 1985"). Where, as here, the plaintiff fails to show a section 1985 conspiracy "motivated by some 'racial, or perhaps otherwise class-based, invidiously discriminatory animus,'" the plaintiff "has no claim under § 1986." <u>Maymí v. Puerto Rico Ports Authority</u>, 515 F.3d at 30. Summary judgment in Barth's favor on the section 1986 claim is therefore not warranted.

<u>CONCLUSION</u>

In accordance with the foregoing discussion, Barth's summary judgment motion (Docket Entry # 65) is **DENIED**. The parties shall appear for a status conference on May 1, 2018, at 2:30 p.m. to

set a trial date.

                                                                _____/s/ Marianne B. Bowler_____
                                                                **MARIANNE B. BOWLER**
                                                                 United States Magistrate Judge